IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| KENNETH E. BRUGGER, Jr., and NANCY K. BRUGGER,<br><br>Plaintiffs,<br><br>v.<br><br>C.R. BARD, INC., and DAVOL, INC.,<br><br>Defendants. | C/A No. 3:17-cv-0228-CMC<br><br><br>Opinion and Order<br>Denying Motion to Dismiss |

Through this action, Kenneth E. Brugger, Jr. ("Brugger" or "Mr. Brugger") and his wife Nancy K. Brugger ("Mrs. Brugger"), seek recovery from C.R. Bard, Inc. ("Bard"), and Davol, Inc. ("Davol") (collectively "Defendants"), for injuries Mr. Brugger allegedly suffered as a result of use of Composix L/P Mesh with Echo Positioning System 6x8 ("Bard Mesh") in hernia repair surgery. The Amended Complaint alleges Defendants "were the researchers and/or designers and/or manufacturers and/or assemblers and/or testers and/or labelers and/or packagers and/or promoters and/or sellers and/or distributors and/or otherwise engaged in placing [Bard Mesh] into the stream of commerce[.]" ECF No. 39 ¶ 8.

Mr. Brugger asserts claims for strict product liability, failure to warn, negligence, breach of express warranty, breach of implied warranty, fraud, constructive fraud, negligent misrepresentations, unjust enrichment, and violation of the South Carolina Unfair Trade Practices Act. Mrs. Brugger asserts a claim for loss of consortium. Both Plaintiffs assert a standalone claim for punitive damages.

The matter is before the court on Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue all claims are barred by the applicable

statute of limitations because the action was filed more than three years after Plaintiffs were on notice of their claims. Defendants rely on evidence Plaintiffs were on inquiry notice no later than August 2013, yet delayed filing this action until January 24, 2017.

For reasons set out below, the motion is denied.

## STANDARD

Because the motion seeks dismissal under Rule 12(b)(6) of the Federal Rules of Procedure, the court accepts the allegations of the Amended Complaint as true and construes those allegations in the light most favorable to Plaintiffs. *See*, *e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court need not, however, accept unwarranted inferences or legal conclusions drawn from the facts. *Id.*

An affirmative defense may be resolved on motion to dismiss, but only if the defense "clearly appears on the face of the complaint." *Richmond, Fredricksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (finding defense did not clearly appear on face of complaint). A motion to dismiss based on a statute of limitations defense requires the complaint "clearly allege all facts necessary to the affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (finding facts necessary to statute of limitations defense were not clearly alleged).

## AMENDED COMPLAINT

The Amended Complaint alleges the Bard Mesh was implanted when Brugger underwent hernia surgery on December 13, 2011. ECF No. 39 ¶ 13.[1] Brugger underwent lap-band surgery roughly nine months later, on September 18, 2012. *Id.* ¶ 14. A few weeks after the lap-band

---

[1] Most if not all dates in the Amended Complaint are alleged to be "on or about" the specified dates. For ease of reference, the court refers only to the referenced date in this order.

surgery, Brugger suffered an "infection thought to be associated with the lap-band surgery[,]" which led to an October 5, 2012 surgery to remove the lap band port and another surgery on February 19, 2013, to install a new port. *Id.* ¶¶ 15, 16 (noting billing records for the later surgery refer to "gastric restriction procedure").

In August 2013, Brugger sought medical care for abdominal pain. A CT scan was performed on August 2, 2013, for "possible recurrent hernia." *Id.* ¶ 17. The report for this scan "suggested a small midline defect just inferior to the surgical mesh consistent with a small ventral hernia without other signs of acute disease within the abdomen or pelvis." *Id.*

Brugger was hospitalized from August 22-25, 2013, "to treat infection due to 'abdominal wall cellulitis/abscess from distant placement of a lap band.'" *Id.* ¶ 18. Records from this hospitalization "report that an August 22, 2013 CT scan showed a small abscess which was close to resolution.'" *Id.* (noting CT report actually referred to both a large and a small abscess).

Brugger returned to the hospital two days later, on August 27, 2013, for a "gastric restriction procedure." *Id.* at 19 (quoting billing records). Brugger believes the lap band was removed in its entirety during this procedure. *Id.* Discharge records from this hospitalization list the diagnosis as "infection due to gastric band procedure." *Id.* at 20. "Throughout this time, [Brugger] was informed by [his] physicians that the pain he suffered was due to the various lap-band procedures . . . and complications resulting from the lap-band procedures." *Id.* ¶ 21.

Several months later, on November 24, 2013, Brugger received treatment for "additional symptoms" he had been experiencing "for several days including fever and redness at 'the previous surgical site.'" *Id.* ¶ 22. He was "discharged that same da[y] with antibiotics" but returned to the hospital on November 26, 2013, at which time another CT scan was performed. *Id.* "This CT scan was ordered due to [Brugger's] 'history of recurrent abdominal wall infections *associated*

3

*with previous laparoscopic bariatric surgery*[]'" and revealed another abscess which was described as acute. *Id*. ¶¶ 22, 23 (emphasis added). This abscess was drained and removed on November 27, 2013, and Brugger was discharged the next day. *Id.* ¶ 23.

During the first few weeks of January 2014, Brugger was again diagnosed with an infection. *Id.* ¶ 26. This infection led to his hospitalization from January 24-31, 2014. *Id.* In a January 24, 2014 report, Brugger's physician wrote "abdominal wall infection, *possible retained mesh*." *Id.* (emphasis added).

Brugger underwent surgery that same day (precisely three years before this action was filed). During that surgery, the surgeon removed a mass and noted the possible involvement of Bard Mesh. *Id.* ¶¶ 27, 28 (describing what was removed as "a large inflammatory mass . . . that "drained thick pus"). A January 27, 2014 pathology report stated the removed mass contained "an embedded portion of mesh . . . surrounded by grey-white, firm, fibrous tissue." *Id.* ¶ 29. Plaintiffs allege that, prior to this report, neither Brugger nor his physicians were aware the Bard Mesh was the source of Brugger's "severe complications." *Id.* ¶ 29; *see also id.* ¶ 32 (referring to the report as confirming Bard Mesh was the "culprit").

Plaintiffs allege they later learned of a recall of Bard Mesh "due to the pouch holding the 'sterile' inflation assembly [having] an inflation adapter with a weak seal that may have been open and contaminated the product compromising the sterility." *Id.* ¶ 41. That recall was posted on June 2, 2014 (within the three years preceding their filing of this action). *Id.* They also allege the FDA released a safety communication about potential complications from surgical mesh generally (not Bard Mesh specifically) on October 6, 2014. *Id.* ¶ 42.

4

**DISCUSSION**

Defendants assert and Plaintiffs do not dispute that South Carolina's three-year statute of limitations applies to all claims asserted in this action. ECF No. 41 -1 at 5 (relying on S.C. Code Ann. § 15-3-530). It is also undisputed the limitations period may be extended by the discovery rule, which required Plaintiffs to bring this action "within three (3) years after [they] knew or by the exercise of reasonable diligence should have known that [they] had a cause of action." *Id.* (quoting S.C. Code Ann. § 15-3-535); *Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1996) ("the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct); *see also Kennedy v. Techtronic Indus. N. Am., Inc.*, C.A. No. 8:13-cv-00871, 2014 WL 958035 at *3 (D.S.C. Mar. 10, 2014) (explaining discovery rule in product liability action requires court to determine when plaintiff "knew or reasonably should have learned of facts that would have given him an indication that his injuries had been caused by an allegedly defective product."). It is not necessary a plaintiff know the full extent of his injuries or even who is responsible for them to trigger the limitaitons period, though he must have sufficient notice to "put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 486 (D.S.C. 2001) (denying motion for summary judgment on statute of limitations defense because, while plaintiff worried that smoking might cause lung cancer and had notice of some abnormality in his chest x-ray, he did not have notice of cancer diagnosis or other serious illness).

The statute of limitations for Plaintiffs' fraud claim is also governed by the discovery rule. *Burgess v. Am. Cancer Soc., S.C. Div., Inc.*, 386 S.E.2d 798, 799 (S.C. App. 1989). However, the

5

triggering event may differ as the statute of limitations begins to run on a fraud claim when the injured party "discover[s] the fraud itself or . . . 'such facts as would have led to the knowledge thereof, if pursued with reasonable diligence.'" *Id.*

Defendants argue the allegations relating to Brugger's August 2, 2013 CT scan are sufficient to establish, as a matter of law, that Plaintiffs were on notice Brugger's problems may have related to the Bard Mesh. Based on this premise, they argue the limitations period expired five months before this action was filed.

The critical allegations establish the August 2, 2013 scan was performed due to a "possible recurrent hernia" and the resulting report identified a "midline defect just inferior to the surgical mesh consistent with a small ventral hernia." ECF No. 39 ¶ 17. For present purposes, the court will assume the combination of the reason for the scan and subsequent report *could* have triggered inquiry notice. The court does not, however, find that they *mandate* a finding Plaintiffs were on inquiry notice, which is the conclusion necessary to warrant dismissal.

To conclude Plaintiffs were on inquiry notice, a fact finder would have to draw inferences from the purpose for the scan and comments on the reports. Specifically, the fact finder would have to conclude that the combination of the purpose and comments not only gave notice of some problem relating to the prior site of the hernia surgery, but also that the problem related in some manner to the Bard Mesh. Drawing those inferences may require reliance on expert testimony. If notice is inferred, further facts would need to be proven or inferences drawn to attribute the notice to Plaintiffs (as opposed to the medical providers who presumably saw the reports).

While a fact finder may, ultimately, find facts or draw inferences supporting a statute of limitations defense, there are allegations that may support contrary inferences. Most critically, the course of treatment undertaken by Brugger's treating physicians may support an inference the only

6

notice to Plaintiffs was of complications relating to lap band surgery leading to removal of the lap band on August 27, 2013, a few weeks after the August 2, 2013 CT scan. *Id.* ¶¶ 19, 20; *see also id.* ¶ 22 (indicating treating physicians still attributed Brugger's problems to his lap band surgery as late as November 24, 2013).

In sum, accepting the allegations of the Amended Complaint as true and drawing all inferences in Plaintiffs' favor, the court holds a reasonable fact finder could conclude Plaintiffs' claims arose, at the earliest, between January 24 and 27, 2014. These are the dates when the mass containing the mesh was removed and a pathology report confirmed the mass, in fact, included surgical mesh. As this places the trigger date within three years preceding filing of this action, the court need not decide whether some later event (i.e., the June 2014 recall of Bard Mesh and FDA's issuance of a safety communication in October 2014 relating to use of surgical mesh generally) was necessary to provide adequate notice of some or all of Plaintiffs' claims.

## CONCLUSION

For reasons set forth above, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 20, 2017

7